BROWN v. PENDERGAST.

SALES—GUARANTY OR WARRANTY—BREACH.
Where defendant, after the installation of a refrigerating machine guaranteed to have a certain capacity by the seller, gave to the engineer who put it in a statement that it conformed to specifications and was in operation, etc., the release did not bar a recovery for failure to conform to the warranty of capacity.

Error to Wayne; Mandell, J. Submitted June 6, 1916. (Docket No. 3.) Decided September 27, 1916.

Assumpsit by Roy W. Brown against Charles D. Pendergast on a promissory note. Judgment for defendant. Plaintiff brings error. Affirmed.

*Douglas, Eaman & Barbour*, for appellant.

*F. J. Riggs*, for appellee.

MOORE, J. This is a suit on a promissory note given by defendant to Wolf, Sayer & Heller, as part payment for a refrigerating machine purchased by defendant of Wolf, Sayer & Heller. Mr. Pendergast was a furrier and desired the machine to refrigerate a room to be used by him for the cold storage of furs. With his plea of the general issue defendant gave notice of failure of consideration in that the machine would not do the work it was guaranteed to do, and also gave notice of recoupment for expenditures incurred and profits lost by reason of the failure of the machine to work properly. At the trial the defendant gave evidence tending to show that the machine would not work properly, and that he had suffered damages for that reason. The plaintiff gave evidence tending

to show that the machine, if properly managed, would do the work.

The plaintiff asked at the conclusion of the evidence for a directed verdict for the amount of the note and interest. The court charged the jury in part as follows:

"The real issue in the case is: Did the firm of Wolf, Sayer & Heller furnish to the defendant the kind of a plant that is specified in the contract that the firm had with Mr. Pendergast? If it did Pendergast must pay this note and interest. If it did not, then Pendergast should be released from such an amount of that note as you find the damage was that he suffered by reason of imperfect or improper machine under the terms of the contract, because that is to be the test. * * *

"The plaintiff claims that after the plant was installed and had been in operation a short time a certain release was given by the defendant to this firm stating that the machine did operate properly and under the terms of the contract that no claim could be made except for defects in workmanship and material. With regard to that I charge and instruct you that that would not relieve the firm from liability in the nature of a set-off because when one purchases something, if the party selling it undertakes or by way of guarantee or assurance represents that it will do the work that is called for in the contract, that, gentlemen of the jury, is sufficient assurance to form the basis of a claim against the party furnishing the goods. I do charge, though, with regard to that paper writing, as follows: 'That any defects or imperfections in the installation of the machine were waived by the acceptance of the machine by the defendant.' That refers to any defects or imperfections with regard to the installation merely. The question whether or not the machine was proper and suitable for the business that was required under the terms of the contract that existed between the plaintiff firm and the defendant remains an open question, and that question must be determined as a disputed question of fact by you. * * *

"The defendant claims that he has not used this machine because it will not work, and the plaintiff answers that by saying if it was properly operated it would work. These claims are supported in a degree by certain testimony, and from that testimony you will have to determine. The defendant coming in and urging a cross-claim by way of set-off and recoupment has to carry the burden of proof with regard to his claim. He must establish his claim by a fair preponderance of evidence."

The material parts of the contract read:

"C. D. PENDERGAST,
    "1090 Third Ave.,
      "Detroit, Mich.
"*Gentlemen:*
    "We propose to furnish you a refrigerating plant as hereinafter described, according to the following specifications and subject to the following conditions, and for the sum hereinafter named. One compressor of three ton refrigerating capacity, fitted with our improved ammonia valves, stuffing boxes of the ammonia compressor will be packed with special ammonia packing and bearings, fitted with automatic oilers, where practicable. The compressor is to be driven by belt (or direct connected motor if so ordered). * * * We will furnish compartment with brine storage tanks and coils of sufficient capacity to assist in maintaining the temperature in the rooms for a period of twelve hours, when the machine is not running; contents of room to be thoroughly chilled before discontinuing the operation of machine and doors not to be opened during the time the machine is not running. * * * It being understood and agreed that we will furnish an erecting engineer who will take charge of and direct the installation of the plant. The board and traveling expenses of the engineer, necessitated for the completion of the work, to be paid for by us. All other labor necessary to assist the engineer in installing the plant is to be provided and paid for by the purchaser. * * * That upon the completion of the installation our engineer will operate the plant for two days, during which time the necessary power, light, water and other inciden-

tals, together with the necessary assistance to our engineer, will be furnished by the purchaser. If at the end of this time the plant meets the requirements of this proposal it shall be accepted by the purchaser in full discharge of all agreements herein contained on our part, except the guarantee as to workmanship and material. It being understood and agreed * * * that we guarantee the ammonia compressor to have a refrigerating capacity equal to the melting of three tons of ice each twenty-four hours, and that when properly and regularly operated not more than twelve hours each day will do the work hereinbefore specified, providing a sufficient quantity of condensing water at not over 60 degrees to 75 degrees Fahr. is furnished by the purchaser, and all other obligations herein contained fulfilled. That we guarantee all workmanship and material, and will replace any part in which original defects of workmanship or material are found within one year. Repairs and adjustments not due to workmanship or materials are to be at the purchaser's expense. * * * That this agreement shall be binding, upon the parties hereto, after being duly signed by the purchaser and approved and accepted by an executive officer of this company. All previous communications, provisions, agreements or contracts, verbal or written, not contained herein, are mutually abrogated and withdrawn and no modification of this agreement shall be binding upon the parties or either of them unless such modification be in writing duly accepted by the purchaser and approved by an executive officer of the company. * * * Refrigerating Plant at Detroit, Michigan. Date Commenced June 1-12. Date Released June 12-12.

"WOLF, SAYER & HELLER,
    "Chicago, Ill.
    "Your engineer, H. F. Schubel, has this day completed the installation of our refrigerating machine, which conforms to the specifications and is now in successful operation. The same being satisfactory and accepted, I therefore release your engineer.
                                "C. D. PENDERGAST."

The entire question centers about what effect shall be given to the paper given to the engineer by the

defendant. We cannot present appellant's claim better than to quote from the brief of his counsel:

"These contracts contained certain guarantees as to the capacity of the machines sold and as to the workmanship and material entering into their construction. But another clause in the contracts provided that after installation the machines should be run for two days, and if at the end of that time they fulfilled the requirements of the contract, they should be accepted by the purchaser in full discharge of all the contract agreements except the guarantee of workmanship and material. * * * It was to guard against such contingencies as these that this provision was inserted. By force of it, if any machine so sold worked satisfactorily for two days under the erecting engineer's care, it was to be accepted by the purchaser in full satisfaction of all agreements in the contract of sale, except the guarantee of workmanship and material. The purchaser was given ample time to observe its type, capacity, and how it worked. If it did not do the guaranteed amount of refrigerating he was not required to accept it, but if it did and he accepted it, he was then forever foreclosed from objecting to the capacity, type or design of the machine. All that he could require under his contract was that Wolf, Sayer & Heller should during one year replace parts in which original defects in workmanship or material appeared."

The record makes it clear that defendant wanted a refrigerating machine in aid of his business, the payee in the note undertook to furnish a machine having a compressor of three-ton refrigerating capacity, with brine tanks and coils of certain capacity, and provided:

"5. That we guarantee the ammonia compressor to have a refrigerating capacity equal to the melting of three tons of ice each twenty-four hours, and that when properly and regularly operated not more than twelve hours each day will do the work hereinbefore specified, providing a sufficient quantity of condensing water at not over 60 degrees to 75 degrees Fahr.

is furnished by the purchaser, and all other obligations herein contained fulfilled.

"6. That we guarantee all workmanship and material, and will replace any part in which original defects of workmanship or material are found within one year. Repairs and adjustments not due to workmanship or materials are to be at the purchaser's expense."

The machine having the guaranteed capacity described was to be the result of a combination of material and workmanship. We think it an unfair construction of the effect of the paper given to the engineer to say that it did away with the agreement as to the guaranteed capacity of the machine.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, STEERE, BROOKE, and PERSON, JJ., concurred.